may be direct and express, or it may arise indirectly out of the acceptance by the shipper of a receipt from the carrier in which it is stated that the value is to be considered a sum specified if no other has been given by the shipper. Such was the character. of the receipt given by the representative of the express company to the plaintiffs in the present case. * * * The contract of agreed valuation being one which the parties could lawfully make, the proof here required a finding that it had been made, and this fixed the measure of the plaintiff's damages at $50 and no more."

[2] The transaction then being evidenced by the written contract, it was error to receive evidence of an alleged prior parol agreement, as all previous negotiations were merged therein. Every provision applicable to the circumstances was material and cannot be ignored. The requirement that the value should be stated therein was essentially material. It was designed to prevent subsequent claims of oral agreements, easy to fabricate and almost impossible to refute. As the receipt is a written contract impliedly consented to by the shipper by the act of receiving it, it is to be upheld and enforced as such.

[3] The respondent undertakes to avoid its effect by the claim that he did not offer it in evidence, but that it was put in by the defendant. There is no substance in this claim. The paper was offered by the defendant in the Long, Belger, Hoffman, Bates, and Greenwald Cases, supra.

The determination of the Appellate Term affirming the judgment and order of the City Court appealed from should be reversed, and a new trial ordered, with costs and disbursements in all courts to the appellant to abide the event.

INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, and SCOTT, JJ., concur.

SCOTT, J. I concur for the reasons stated by Mr. Justice CLARKE, and also upon the ground that the defendant is sued as common carrier, and there is no evidence that defendant ever received any of the furs alleged to have been lost.

---

MALONEY v. MADDEVER et al.

(Supreme Court, Special Term, Niagara County. July 17, 1912.)

1. SCHOOLS AND SCHOOL DISTRICTS (§ 80*)—CONTRACTS FOR COAL—NOTICE FOR BIDS.

The test whether the notice for bids for furnishing a city's school board with coal was sufficiently definite as to the kind of coal which would be received is whether prospective bidders could understandingly make offers for furnishing coal, so that the public might secure the advantage of free competition.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 192–194; Dec. Dig. § 80.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. Schools and School Districts (§ 80*)—Contracts for Coal—Notice for Bids.

A published notice for bids for furnishing to a city's school board "pure anthracite coal" having stated that blank forms on which the bids must be submitted may be obtained from the clerk, such printed form, providing that the coal shall be pure anthracite, that "will meet the government test" for anthracite coal, should be read as part of the notice to bidders.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 192–194; Dec. Dig. § 80.*]

3. Schools and School Districts (§ 80*)—Contracts for Coal—Notice for Bids—"Pure."

If "free burning anthracite" will meet the government test for anthracite, a notice for bids for furnishing a city's school board "pure" anthracite coal, that "will meet the government test" for anthracite coal, is sufficiently definite, without stating that "free burning anthracite" will be received; "pure," in such connection, meaning "separate from all heterogeneous or extraneous matter," and not being synonymous with "true" or "hard."

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 192–194; Dec. Dig. § 80.*

For other definitions, see Words and Phrases, vol. 7, p. 5860; vol. 8, p. 7776.]

4. Schools and School Districts (§ 111*)—Rights of Taxpayers—Injunction.

Failing to establish that a city's school board acted in "clear violation of law" in awarding a contract for furnishing coal depending on the notice for bids having been sufficiently definite, a taxpayer is not entitled to a temporary injunction.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 265–268; Dec. Dig. § 111.*]

Action by Michael Maloney, a taxpayer, against N. Franklin Maddever and others. Defendants move to vacate the temporary injunction. Motion granted.

E. E. Franchot, for plaintiff.
F. G. Anderson, Corp. Counsel, for defendant Board of Education.
A. Thibaudeau, for defendant Shipston.

POUND, J. The motion to vacate the temporary injunction restraining the Board of Education from letting a contract for Connel anthracite coal to Clark Shipston, doing business as the Konnel Coal Company, is now resisted by plaintiff *solely* upon the ground that the notice to bidders did not describe the material for which the contract would be let with sufficient definiteness to secure the best results from competitive bidding, in that it did not indicate that bids for free burning anthracite, sometimes known as semi-anthracite, Loyal sock, Sullivan county, or Bernice coal, and including the Connel anthracite, would be received.

[1] It is claimed on the one hand that Connel anthracite will meet the government test for anthracite, and, on the other hand, that it is not a hard anthracite, but is of a distinct grade or class of coal, of lower price and in some respects inferior qualities. Could prospective bid-

ders understandingly make offers for furnishing coal, so that the public might secure the advantages of free competition? That is the sole test in such cases. Gage v. City of New York, 110 App. Div. 403, 97 N. Y. Supp. 157.

[2, 3] The published "Notice to *all* Coal Dealers" calls for sealed bids for furnishing 1,450 tons, more or less, of "pure anthracite coal," and further states that "blank forms·upon which the bids must be submitted may be obtained·from the clerk." The blank form so furnished contains a provision that the bidder agrees his coal "to be pure anthracite that *will meet the government test for* anthracite coal." "Pure," in this connection, means nothing more than "separate from all heterogeneous or extraneous matter" (Webster's Unabridged Dictionary), such as *pure* water or *pure* gold. It is not a scientific or trade-name, nor is it synonymous with "true" or "hard" anthracite, as distinguished from free-burning or semi-anthracite.

It is claimed by defendants that the bidders were fairly informed that bids would be received for any unmixed anthracite that would meet the government test for anthracite. If this notice, as modified by the blank form of bid, in itself means anything, it means that nothing more would be required than that the coal should meet the government test for anthracite. The printed form for bids should be read as a part of the notice to bidders, for it is directly referred to therein.

If the notice to bidders was of sufficient definiteness to permit competition by dealers in so-called free-burning or semi-anthracite coal, it matters not what mental operations of the bidders stood in the way of further bids on that class of coal. Was the notice so indefinite as to "permit favoritism and jobbing" on the part of the Board of Education? Could the board reasonably reject bids for free-burning anthracite on the ground that the notice did not call for such bids? Such bidder might, I think, properly insist on "the government test for anthracite" as applied to his coal, and it would be the duty of the board to let the contract to the lowest bidder, if his coal met that test. City Charter, § 192.

It appears that the coal dealers of Niagara Falls, with a reasonably definite and well-understood test for anthracite indicated to them, took it for granted that bids for free-burning anthracite would not be received. That was an error of judgment on their part, which is not brought home to the Board of Education by any charge of bad faith, fraud, corruption, waste, or extravagance on its part, for all that is claimed by plaintiff is that the notice to bidders was so indefinite as to make it illegal to award the contract to the lowest bidder, who specifically indicated that it was his intention to furnish Connel anthracite, which would meet the government test for anthracite coal.

[4] The plaintiff fails to establish that the board acted in "clear violation of law" in awarding the contract to the Konnel Coal Company. That he must do to prevail on this motion. Stockton v. City of Buffalo, 108 App. Div. 170, 95 N. Y. Supp. 509. The plaintiff's case being at best very doubtful on the facts and the law, I am of the opinion that the Board of Education should be allowed to complete

its purchase without further interference from the court and to have the law established as to the future on the trial of the action.

So ordered.